KLEINFELD, Circuit Judge,
dissenting.
I respectfully dissent.
The NLRB regional director has a sufficient likelihood of prevailing on the “fraudulent speech” claim, under our decision in San Antonio Community Hospital v. Southern California District Council of Carpenters,[1] so that he should have been granted a preliminary injunction based on the Administrative Law Judge’s findings and decision.
The record has photographs of the banners at issue. A typical one says “LABOR DISPUTE” twice, and in huge red letters, “SHAME ON THE WESTIN BONAVENTURE.” Anthony’s Fish Grotto got its own special banner, which had “LABOR DISPUTE” printed twice, and then the individualized message “DON’T EAT AT ANTHONY’S FISH GROTTO.”
Many people, because of their sympathies or their obligations as union members, will not patronize firms whose employees are engaged in disputes over union recognition or terms of employment. Such individuals, seeing the “SHAME ON THE WESTIN BONAVENTURE” banner, for example, would be inclined to schedule conventions, dinners, weddings and other events at a different hotel. They would also likely avoid staying at the Westin. According to deposition evidence in the record, one of the hotels subjected to the banner lost a Teamsters’ Convention because of the banners in front. When higher officials of the Teamsters arrived before the entire group, they “were quite aggravated and upset,” and their convention planner cancelled the convention, a day after it was supposed to start.
The huge banners are displayed to people driving by. Handbills tell readers that E & K Arizona was a subcontractor for a contractor hired to do work by the firm where the banner is displayed, but a person had to approach a union representative and ask for a handbill to learn that. Evidently the firms subjected to the banners did not even hire E & K Arizona. No one driving by would get the explanatory handbill, or see anything explaining that the union’s dispute was with another firm entirely and not the firm upon whom the banner invoked “shame.” The union continued to post its banners long after the firms that contracted with E & K Arizona had finished their work and left, so the banners and their “shame” message were present even when there was no work going on at the sites to which the union had any objection.
The Administrative Law Judge made a finding of fact that “[t]he only message the banners could reasonably have conveyed to viewers, including customers, suppliers, and visitors of the targeted employers or persons, was that Respondent Unions had primary labor disputes with the neutrals named on the banners.” The union “must have foreseen that misconceptions would be the consequence of their bannering,” and “most banner viewers did not, and were not intended to, read the handbills,” which were distributed on the street only to people who approached the union representatives and asked for them. The union *1220 “had the intent and purpose,” the Administrative Law Judge found, “of causing the targeted neutral employers or persons so much discomfiture through customer, supplier, or visitor complaints, inquiries, criticism, or withheld business that the neutral employers or persons would either cease doing business with the primary employers or influence other neutral employers or persons to cease doing business with the primary employers.”
The majority adopts the district court’s reasoning that the union had a sort of philosophical dispute with companies that did business with other companies that then did business with yet other companies with which the union actually had a dispute. The argument is that the public cannot be expected to understand the fine distinctions between primary and secondary labor disputes. I think that is true, but it cuts the other way. The public cannot be expected to imagine what the union’s real dispute is, when it invokes “SHAME” because of a “LABOR DISPUTE” on companies who are contractually two steps removed from the company from which the union is actually seeking benefits for its members. A reasonable person driving by the Westin Bonaventure or the other firms subjected to the banners would think “that company must not be treating its employees right,” not “that company must be dealing with other companies that deal with yet other companies that don’t treat their employees right.”
We need not even reach the question whether the banners are “picketing,” because we are obligated to follow our decision in San Antonio Community Hospital. In that case, the carpenters union displayed a banner in front of a hospital saying that the hospital was “full of rats,” to advance its position in a dispute with a construction company that was working on a hospital expansion project.[2] The union had an innocent explanation — that “rats” in labor parlance means, not rodents, but contractors who pay less than the prevailing wage, which was true. But we held that the banner “crossed the line separating protected rhetorical hyperbole from unprotected fraudulent misrepresentations of fact” because the manner of display “could cause most — if not all — readers to be misled into believing” what we called “the most natural reading,” that the hospital had a rodent problem.[3]
The most significant distinction between San Antonio Community Hospital and this case is that at least the banners in San , Antonio Community Hospital said with whom the union’s dispute really was, albeit in much smaller letters. In our case, there is no way for passersby to have their false impressions corrected unless they find a place to park, walk over to a union representative, and ask for a handbill. We considered the same First Amendment issues in San Antonio Community Hospital that are presented in this case, and despite a vigorous dissent, we held that because the speech was “fraudulent,” it was unprotected.[4] The “deep historical meaning” claimed for the word “rats” by the union in San Antonio Community Hospital[5] is no different from the metaphysical parsing of the term “labor dispute” by the union in this case. The union’s dispute was with secondary and tertiary employers, but the “most natural reading,” the one that the banners would cause “most — if not all — readers to be misled into believing” was that the union thought that the employees of the firms— in front of which the banners were dis *1221 played — were being treated shamefully. And that was not so.
The hospital in San Antonio Community Hospital got an injunction and the Regional Director of the NLRB should get one in this case. Like cases should be treated alike.

. San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters, 125 F.3d 1230 (9th Cir.1997).

. Id. at 1233.

. Id. at 1236-37.

. Id. at 1237.

. Id. at 1235.